FILED'08 AUG 07 15:09USDC-ORP

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

| | |
|---|---|
| JACK DOE 1, JACK DOE 2, JACK DOE 3,<br>JACK DOE 4, JACK DOE 5, and JACK<br>DOE 6, | CV. 07-1499-PK |
| Plaintiffs, | FINDINGS AND<br>RECOMMENDATION |
| v. | |
| CORPORATION OF THE PRESIDING<br>BISHOP OF THE CHURCH OF JESUS<br>CHRIST OF LATTER-DAY SAINTS,<br>CORPORATION OF THE PRESIDENT<br>OF THE CHURCH OF JESUS CHRIST<br>OF LATTER-DAY SAINTS, THE<br>BOY SCOUTS OF AMERICA, and<br>CASCADE PACIFIC COUNCIL, BOY<br>SCOUTS OF AMERICA, | |
| Defendants. | |

PAPAK, Magistrate Judge:

Plaintiffs Jack Does 1-6 brought this action for sexual abuse of a child, negligence and

intentional infliction of emotional distress on October 3, 2007, against Defendants Corporation

Page 1 - FINDINGS AND RECOMMENDATION

of the Presiding Bishop of the Church of Jesus Christ of Latter-day Saints, Corporation of the

President of the Church of Jesus Christ of Latter-day Saints (together, "LDS Church"), the Boy

Scouts of America and Cascade Pacific Council, Boy Scouts of America (together, "BSA").

Plaintiffs filed in the Multnomah County Circuit Court.  LDS Defendants then removed to the

U.S. District Court on October 9, 2007, asserting that federal jurisdiction is proper under 28

U.S.C. § 1331 because First Amendment issues arise on the face of the complaint.  The BSA

Defendants either joined in or consented to removal.  Plaintiffs' motion for remand to state court

is currently before the Court.  For the reasons set forth below, Plaintiffs' Motion for Remand

(#14) should be granted.

## FACTUAL BACKGROUND

Plaintiffs' claims for sexual abuse of a child, negligence and intentional infliction of

emotional distress arise from the alleged actions of Timur Van Dykes ("Dykes") and the action or

inaction of the LDS Church and the BSA.  Plaintiffs allege that the LDS Church knew of Dykes's

predatory behavior but allowed him to continue working unsupervised with boys, including

Plaintiffs.  (#1 ¶¶ 1-11.)  Plaintiffs specifically allege the LDS Church is liable through

*respondeat superior* for Dykes's actions and for its direct negligence in failing to implement a

policy addressing child sexual abuse complaints after it became aware of institution-wide child

abuse problems.

While Plaintiffs were children participating in LDS Church and BSA activities such as

religious services, camping trips, meetings and events, Dykes acted as a Spiritual Leader and

Scout Leader, and became closely involved with Plaintiffs.  (#1 ¶¶ 1-2.)  Plaintiffs allege, under a

Page 2 - FINDINGS AND RECOMMENDATION

theory of *respondeat superior*, that Dykes sexually abused and molested them in the course of his employment with the LDS Church and the BSA. Plaintiffs also allege that the LDS Church negligently permitted Dykes to continue working when they knew or should have known about his predatory behavior. Plaintiffs claim that, in the early 1980's, the LDS Church and BSA discovered Dykes had abused a child, but permitted his continued participation in LDS Church and BSA events. The Church and BSA undertook their own investigations of the allegations against Dykes. (#1 ¶¶ 69-72.)

While Dykes's conduct gives rise to Plaintiffs' *respondeat superior* claims, Plaintiffs also allege direct and institution-wide negligence against the LDS Church in their Seventeenth Claim for Relief which alleges institutional failure to address the problem. Plaintiffs assert that the LDS Church acted negligently at an institutional level by failing to "implement adequate child sex abuse policies," despite awareness that the Church had an institution-wide child abuse problem. (First Amended Complaint ¶ 106.)

At oral argument, the parties agreed that the Court should consider the remand motion based on the allegations contained in Plaintiffs' proposed First Amended Complaint, which they have not yet filed. That document adds more detailed factual allegations and modifies some of the claims. The proposed Seventeenth Claim alleges that LDS Defendants knew that pedophiles were using LDS callings and assignments to victimize children and that the LDS Defendants had an institution-wide child abuse problem. Plaintiffs assert that LDS Defendants' "failure to implement adequate child abuse policies created a foreseeable risk of harm to the safety of children in the care of the LDS Defendants." (First Amended Complaint ¶ 107.) Defendants rest their federal question argument on this Seventeenth Claim as it implicates institutional policy of

Page 3 - FINDINGS AND RECOMMENDATION

the LDS Church.

## LEGAL STANDARD

A party may remove to federal court only when the action could have been originally filed in federal court. 28 U.S.C. § 1441(a)(2). The removing party bears the burden of showing that the federal court has subject matter jurisdiction. *Gaus v. Miles, Inc.*, 980 F.2d 564, 566 (9th Cir. 1992). Upon a party's motion, however, the federal court can remand a case to state court for lack of subject matter jurisdiction at any time before the court issues a final judgment. 28 U.S.C. § 1447(c). After the court examines possible bases for federal jurisdiction, any remaining doubt about subject matter jurisdiction favors remand. *Gaus*, 980 F.2d at 566, *citing Libhart v. Santa Monica Dairy Co.*, 592 F.2d 1062, 1064 (9th Cir. 1979); *see also Duncan v. Stuetzle*, 76 F.3d 1480, 1485 (9th Cir. 1996) (a court must reject jurisdiction if any doubt exists because the statute conferring federal jurisdiction must be strictly construed).

Absent diversity jurisdiction, the complaint must state a federal question to confer subject matter jurisdiction. 28 U.S.C. §§ 1331, 1441(b); *Caterpillar, Inc. v. Williams*, 482 U.S. 386, 392 (1987). Any issue arising under the Constitution, laws, or treaties of the United States constitutes a federal question. 28 U.S.C. §§ 1331, 1441(b). Under the "well-pleaded" complaint rule, the federal question must arise on the face of the complaint. *Merrell Dow Pharmaceuticals, Inc. v. Thompson*, 478 U.S. 804, 808 (1986). If the federal question is presented by a defense and not on the face of the complaint, the court does not have jurisdiction. *Gully v. First Nat'l Bank*, 299 U.S. 109, 113 (1936); *Merrell*, 478 U.S. at 808. Moreover, where a complaint states claims valid on both state and federal grounds, the plaintiff "may ignore the federal question [and] assert only

state claims," thus defeating removal. *Duncan*, 76 F.3d at 1485.

The plaintiff may not, however, omit to plead necessary federal claims in order to avoid

federal jurisdiction. *Franchise Tax Bd. v. Constr. Laborers Vacation Trust*, 463 U.S. 1, 22

(1983) (superseded by statute on other grounds). A cause of action pled as a state claim provides

federal jurisdiction if federal law completely preempts the state cause of action. *Id.* at 24.

Alternatively, federal jurisdiction lies where it appears that some substantial and disputed

question of federal law is a "necessary element" of one of the well-pleaded state claims. *Id.* at

13.

## DISCUSSION

Defendants argue that Plaintiffs' Seventeenth Claim is both preempted by federal law and

that a substantial and disputed question of federal law is a necessary element of that claim.

### I.    Federal Question Jurisdiction Based on Preemption

In a few limited areas, where Congress has chosen to regulate an entire field, federal law

completely preempts state law such that the action must be brought as a federal claim. *ARCO*

*Envt'l Remediation, v. Department of Health & Envt'l Quality*, 213 F.3d 1108, 1114 (9th Cir.

2000); *see e.g.*, *Metro. Life Ins. Co. v. Taylor*, 481 U.S. 58, 66-67 (1987) (finding plaintiff's state

claim completely preempted by federal law because Congress explicitly intended to make causes

of action within the scope of ERISA's civil enforcement provisions removable to federal court);

*Ben. Nat'l Bank v. Anderson*, 539 U.S. 1, 11 (2003) (state cause of action for usury preempted

because National Bank Act provided exclusive federal cause of action for usury against national

banks); *cf. Guinasso v. Pacific First Federal Sav. & Loan Assc.*, 656 F.2d 1364, 1367 (9th Cir.

1981) (complete preemption occurs when federal law both displaces state law and provides a

Page 5 - FINDINGS AND RECOMMENDATION

federal remedy for plaintiffs such that they must rely on federal law). When federal and state

laws conflict, however, federal preemption arises only as a defense, and thus does not provide

grounds for removal. *ARCO*, 213 F.3d at 1114.

Here, Plaintiffs argue that complete preemption does not apply because their tort claims

involve only state law. Plaintiffs have not invoked any federal statutory scheme to allege their

claims. They argue that if preemption becomes relevant to the case it will be as part of the First

Amendment defense.

Defendants contend, without much enthusiasm, that Plaintiffs' Seventeenth Claim raises

important constitutional concerns and is thereby removable. As an example of its preemption

analysis, Defendants cite *Wheeling-Pittsburgh Steel Corp. v. Mitsui & Co.*, 26 F. Supp. 2d 1022,

1028 (S.D. Ohio 1998). In *Wheeling*, the court held that a complaint "couched solely in terms of

state law" was properly removed to federal court where plaintiff sought to enjoin importation of

foreign steel. *Id.* In deciding that remand was prohibited, however, the court recognized that the

authority to regulate international trade is vested exclusively with the federal government under

the express terms of the United States Constitution. *Id.* at 1026. Plaintiff's claim was thus

completely preempted by federal law.

Here, no federal statute preempts state tort actions brought against religious institutions.

Nor does the First Amendment, which may serve as the basis for the Defendants' defense,

completely preempt Plaintiffs' state tort law claims. Complete preemption does not apply to this

case and thus does not provide a basis for federal question jurisdiction.

Page 6 - FINDINGS AND RECOMMENDATION

## II.    Federal Question Jurisdiction Based on Federal Law as a Necessary Element of a Claim

Absent federal preemption, the court may find a federal question inherent in the complaint if "it appears that some substantial, disputed question of federal law is a necessary element of one of the well-pleaded state claims." *Franchise Tax Bd.*, 463 U.S. at 13. To confer jurisdiction, "a right or immunity created by the Constitution or laws of the United States must be an element, and an essential one, of the plaintiff's cause of action." *Gully v. First Nat'l Bank*, 299 U.S. 109, 112 (1936). "The question is, does a state-law claim necessarily raise a stated federal issue, actually disputed and substantial, which a federal forum may entertain without disturbing any congressionally approved balance of federal and state judicial responsibilities." *Grable & Sons Metal Prods. v. Darue Eng'g & Mfg.*, 545 U.S. 308, 314 (2005) (holding federal court had jurisdiction where complaint concerning property seized by the I.R.S. without notice depended on "adequate notice" as defined by federal law).

A federal court does not have jurisdiction, however, where constitutional issues wholly comprise the naturally corresponding defense to validly asserted state claims. In *Oklahoma Tax Commission v. Graham*, where the state sued an Indian tribe to recover excise taxes on bingo games, the Supreme Court held that the defendant Indian tribe could not use federal immunity as grounds for removal, despite the inherent issue of federal immunity in any complaint against a sovereign tribe. 489 U.S. 838, 840-41 (1989) ("[I]t has long been settled that the existence of a federal immunity to the claims asserted does not convert a suit otherwise arising under state law into one which, in the statutory sense, arises under federal law.") (citing *Gully v. First Nat'l Bank*, 299 U.S. 109 (1936)).

Page 7 - FINDINGS AND RECOMMENDATION

On the other hand, *Morongo Band of Mission Indians v. Rose* held that a federal tribal-sovereignty issue arose from the face of the complaint where the plaintiff tribe sought to enforce a reservation bingo game regulation against an individual.  893 F.2d 1074, 1077 (9th Cir. 1990). The court reasoned that it had to resolve the federal issue of whether or not the tribe had sovereignty, before it could determine if the tribe could assert civil authority over an individual who was not a member of the tribe.  *Id.* ("In attempting to enforce its ordinance . . . the Band necessarily invokes its sovereign power and relies on its disputed ability, under principles of federal common law, to apply that power against one outside its community.")  Similarly, in *Board of County Commissioners v. Shroyer*, 662 F. Supp. 1542, 1544 (D. Colo. 1987), a federal issue clearly arose from the complaint because the plaintiff was a state actor seeking to silence a defendant who had publicly spoken against the Board and thus the complaint itself "[was] infected with First Amendment violations."  *Id.* at 1545.

*Morongo* and *Shroyer* demonstrate that where an essential element of a plaintiff's claim involves federal law, the case may be removed regardless of the manner in which the claim was characterized in the complaint.  *Graham* illustrates that where the complaint does not necessarily implicate federal law, removal is improper, notwithstanding the likelihood of a defense based on federal law.  This case more accurately mirrors the facts of *Graham* than those of *Morongo* or *Shroyer*.  Nothing about Plaintiffs' claim that the LDS Church was negligent in failing to implement secular child sex abuse policies when it was aware of an institution-wide child abuse problem requires this court to resolve a federal issue, although such an issue may certainly be presented by affirmative defense.

In similar child sex abuse cases against religious organizations, courts have consistently

held that *respondeat superior* claims do not raise First Amendment issues that confer federal

jurisdiction and that state courts could neutrally apply secular state law where church employees

allegedly violated state law. *M.K. v. Archdiocese of Portland*, 228 F. Supp. 2d 1168, 1172 (D.

Or. 2001) *adopted in its entirety in M.K. v. Archdiocese of Portland*, 228 F. Supp. 2d 1168, 1168

(D. Or. 2002); Remand Order from *B.B. v. Corp. of the President of the Church of Jesus Christ

of Latter-day Saints*, CV 02-80-BR (D. Or. 2002); *Doe v. Archdiocese of Denver*, 413 F. Supp.

2d 1187, 1194-95 (D. Colo. 2006). The court in *M.K.*, for example, concluded:

> The court will not in any matter limit the priests [sic] duties or the
> ability of the church to supervise the Priests. Accordingly, the
> consideration by the court of Defendants' canons, or other religious
> rules, will not infringe in any way upon Defendants' freedom of
> religion and will not implicate the First Amendment. In the absence
> of any constitutional issues, this court lacks jurisdiction over this
> action and it should be remanded to state court.

228 F. Supp. 2d at 1172. The *Doe* court held: "The general duty of care depends in no way upon

the religious status of the defendant organizations. Any liability will attach here as a result of the

defendants' conduct *qua* employers, not *qua* religious organizations." *Doe*, 413 F. Supp. 2d

1187, at 1193.

Defendants argue that while the *respondeat superior* claims in this case may not require

the resolution of a substantial question of federal law and thus confer federal jurisdiction, the

claims for direct institution-wide negligence implicate the First Amendment because such claims

necessarily attack ecclesiastical policy. Because the direct negligence claims in the First

Amended Complaint incorporate language such as "Bishop McEwen began informing people that

Dykes had 'repented,' and that he should be welcomed back," Defendants argue that the

complaint questions church doctrine regarding repentance. (Proposed Amended Complaint ¶

94.) This factual allegation, however, is not a claim for relief, and is not essential to proof of Plaintiffs' Seventeenth Claim. Although allegations regarding the Bishop's proclamation of repentance of an admitted pedophile demonstrate the fine line between secular and ecclesiastical policy, Plaintiffs' institutional claim can still be resolved without adjudging Defendants' religious policies.

While no court has addressed the question presented herein directly, the *respondeat superior* cases guide this Court because the LDS Defendants reiterate similar arguments, essentially saying that a 'secular' tort claim can become 'ecclesiastical' solely by virtue of being brought against a church.[1]  Like the courts in the cases alleging only *respondeat superior* liability, I reject that contention because Plaintiffs' institution-wide negligence claims attack a secular child abuse policy, or lack thereof. Plaintiffs allege that Defendants violated a secular duty of care, one that presumably binds all entities that organize activities for children. To the extent that any such duty intersects with the First Amendment, it does so as a defense raised by the LDS Church–not as an element of Plaintiffs' claim. Plaintiffs' cause of action alleges the failure of a secular policy without challenging the religious beliefs or ecclesiastical doctrine of the LDS Church. The First Amendment will not arise as an issue unless Defendants raise the defense that their religious status exempts them from an otherwise applicable duty of care.

---

[1]Defendants contrast this case to "cases involving icy church sidewalks," arguing that there are no neutral principles of law available to judge the church's policy of "pastoral care." (#21 at 14.) While that may be true, neutral policies of law govern whether an institution negligently created a likely risk of child sexual abuse, just as neutral policies determine whether a church negligently created a risk for people walking on its icy sidewalks. Although Defendants may argue that their ecclesiastical policies fulfilled their duty of care, the claims against them allege the failure of a secular duty, not a religious one. The icy sidewalk example only differs from this case in that a religious *defense* could be raised here.

Whatever the strength of that defense, it remains a defense.

Nothing in the Plaintiffs' claims raises a federal question, either facially or inherently. Accordingly, this Court does not have jurisdiction over this case and it should be remanded to state court.

## CONCLUSION

For the reasons set forth above, this Court recommends that Plaintiffs' motion for remand be granted.

## SCHEDULING ORDER

The above Findings and Recommendation will be referred to a United States District Judge for review. Objections, if any, are due August 22, 2008. If no objections are filed, review of the Findings and Recommendation will go under advisement on that date. If objections are filed, a response to the objections is due fourteen days after the date the objections are filed and the review of the Findings and Recommendation will go under advisement on that date.

Dated this 7th day of August, 2008.

Honorable Paul Papak
United States Magistrate Judge

Page 11 - FINDINGS AND RECOMMENDATION