**Stephen F. English**, OSB #730843
E-mail: steve.english@bullivant.com
**David A. Ernst**, OSB #851967
E-mail: dave.ernst@bullivant.com
BULLIVANT HOUSER BAILEY PC
300 Pioneer Tower
888 SW Fifth Avenue
Portland, Oregon 97204-2089
Telephone: 503.228.6351
Facsimile: 503.295.0915
   Attorneys for LDS Church Defendants

UNITED STATES DISTRICT COURT

DISTRICT OF OREGON

| | |
|---|---|
| JACK DOE 1, an individual proceeding under a fictitious name; JACK DOE 2, an individual proceeding under a fictitious name; JACK DOE 3, an individual proceeding under a fictitious name; JACK DOE 4, an individual proceeding under a fictitious name; JACK DOE 5, an individual proceeding under a fictitious name; and JACK DOE 6, an individual proceeding under a fictitious name,<br><br>                    Plaintiffs,<br><br>       v.<br><br>CORPORATION OF THE PRESIDING BISHOP OF THE CHURCH OF JESUS CHRIST OF LATTER-DAY SAINTS, a foreign corporation sole registered to do business in the State of Oregon; CORPORATION OF THE PRESIDENT OF THE CHURCH OF JESUS CHRIST OF LATTER-DAY SAINTS AND SUCCESSORS, a foreign corporation sole registered to do business in the State of Oregon; THE BOY SCOUTS OF AMERICA, a congressionally chartered corporation, authorized to do business in | Civil No.: 3:07-CV-1499-PK<br><br>**CHURCH DEFENDANTS' OBJECTIONS TO FINDINGS AND RECOMMENDATION REGARDING MOTION TO REMAND**<br><br>**(ORAL ARGUMENT REQUESTED)** |

Bullivant|Houser|Bailey PC

888 S.W. Fifth Avenue, Suite 300
Portland, Oregon 97204-2089
Telephone: 503.228.6351

**CHURCH DEFENDANTS' OBJECTIONS TO FINDINGS AND RECOMMENDATIONS REGARDING MOTION TO REMAND**
**Page 1**

Oregon; and CASCADE PACIFIC
COUNCIL, BOY SCOUTS OF AMERICA,
an Oregon non-profit corporation,

   Defendants.

Defendants Corporation of the Presiding Bishop of The Church of Jesus Christ of *Latter-Day* Saints and Corporation of the President of The Church of Jesus Christ of *Latter-Day* Saints (collectively "the Church Defendants") submit the following objections to the Magistrate Judge's Findings and Recommendation (Document No. 47) (hereafter "Recommendation") regarding Plaintiffs' Motion for Remand.

## PRELIMINARY STATEMENT

On October 9, 2007, the Church Defendants removed this action from Oregon state court based on federal question jurisdiction. Plaintiffs filed their Motion for Remand on November 8, 2007, challenging federal question jurisdiction (Document No. 14). The Church Defendants opposed the motion (Document No. 21), which provides detailed argument on the remand issue. On August 7, 2008, Magistrate Judge Papak filed his Findings and Recommendation, recommending that the Motion for Remand should be granted. A copy of the relevant Proposed Amended Complaint ("Complaint" or "Prop. Am. Cmplt.") referenced in Judge Papak's opinion is attached as Exhibit B to the Declaration of David A. Ernst in Support of Church's Objections to Findings and Recommendations Regarding Motion to Remand.[1] For the following reasons, the Church Defendants

---

[1] The briefing on the motion to remand focused on the original complaint and especially its Fourteenth Claim for Relief. By agreement of the parties at oral argument, the Magistrate Judge focused on Plaintiffs' Proposed Amended Complaint (referred to in the text herein as "Complaint" for short), which is now the relevant pleading. The Fourteenth Claim in the original complaint is now the Seventeenth Claim in the Proposed Amended Complaint.

Bullivant|Houser|Bailey PC

888 S.W. Fifth Avenue, Suite 300
Portland, Oregon 97204-2089
Telephone: 503.228.6351

**CHURCH DEFENDANTS' OBJECTIONS TO FINDINGS AND RECOMMENDATIONS REGARDING MOTION TO REMAND**
**Page 2**

respectfully object to this recommendation and request that plaintiff's Motion for Remand be denied.

## INTRODUCTION

It is well established that removal of a state-law claim is proper if the claim requires resolution of a substantial question of federal law. Substantial and unavoidable First Amendment issues arise when a court is asked to adjudicate claims based on contested interpretations of religious doctrine, polity, or ecclesiastical policies. Plaintiffs have sued the Church Defendants for injuries based on child abuse allegedly perpetrated by a member of The Church of Jesus Christ of *Latter-Day* Saints ("LDS Church" or "Church"). Their complaint states well over a dozen ordinary tort claims that under these facts do not give rise to federal question jurisdiction.

But Plaintiffs' Seventeenth Claim is different. It seeks to hold the Church liable for its alleged "institution-wide" failure to implement adequate policies to prevent the use of religious callings to abuse children. *See* Prop. Am. Cmplt., ¶¶ 105-09. Rather than adjudicate the facts of this case, Plaintiffs have brought what amounts to an institutional reform claim that challenges the worldwide Church's internal religious practices and doctrines regarding ecclesiastical discipline, repentance, forgiveness, and religious callings. The Church Defendants maintain that this unique (perhaps unprecedented) claim gives rise to removal jurisdiction because no court can adjudicate it without first addressing substantial and complex questions of First Amendment law.

The Magistrate Judge has recommended that the Motion for Remand be granted. The Church Defendants do not dispute the Magistrate Judge's summary of applicable law. However, the Magistrate Judge has erred in finding that the Seventeenth Claim can be interpreted as a challenge solely to *secular* abuse policies, rather than religious ones. The complaint does not limit itself to scrutiny of secular abuse policies – it asks the court to

Bullivant|Houser|Bailey PC

888 S.W. Fifth Avenue, Suite 300
Portland, Oregon 97204-2089
Telephone: 503.228.6351

**CHURCH DEFENDANTS' OBJECTIONS TO FINDINGS AND RECOMMENDATIONS REGARDING MOTION TO REMAND**
**Page 3**

determine the adequacy of *all* such policies, especially as they relate to ecclesiastical callings to ordinary members within Church congregations.

More fundamentally, all of the Church's policies relating to child abuse are rooted in its ecclesiastical beliefs and doctrines. Because Church doctrine considers abuse a matter of sin, repentance, and pastoral care (including ministry to the victim and, where possible, the perpetrator) – and because the specific allegations of the Complaint pertain to religious "callings and assignments" – all relevant policies are ecclesiastical: there are no solely "secular" risk management policies to evaluate.

1. Plaintiffs effectively concede this point in the breadth of their allegations. They are not simply contending that the Church's risk management policies are negligent or ineffective; they are directly claiming that the ecclesiastical policies of the Church – those contained in canonized doctrinal statements and other instructions to clergy – are negligent and even reckless. If plaintiff's are allowed to proceed on these claims, a finder of fact will be instructed to review and pass upon the Church's ecclesiastical *General Handbook of Instructions* to its clergy as to how members who perpetrate or who are victims of child abuse should be treated, as well as the scriptural doctrines which underlie those ecclesiastical instructions. A copy of excerpts from the Church of Jesus Christ of Latter-Day Saints General Handbook of Instructions for Clergy (1983 edition) is attached as Exhibit A to the Declaration of David A. Ernst in Support of Church's Objections to Findings and Recommendations Regarding Motion to Remand.

Indeed, there is no way for Plaintiffs to put into evidence the allegedly inappropriate way that the Church institutionally handles a situation when one member in the congregation abuses another, except to put these ecclesiastical materials into evidence, and to elicit testimony from the Church's clergy as to what they mean. Such a procedure necessarily includes one of the most important of federal questions – whether Plaintiffs can rely on what are indisputably ecclesiastical materials of doctrine and belief without violating the

Bullivant|Houser|Bailey PC

888 S.W. Fifth Avenue, Suite 300
Portland, Oregon 97204-2089
Telephone: 503.228.6351

**CHURCH DEFENDANTS' OBJECTIONS TO FINDINGS AND RECOMMENDATIONS REGARDING MOTION TO REMAND**
**Page 4**

Establishment Clause's proscription against adjudicating a church's ecclesiastical operations and teachings.

Under these circumstances, this Court should decline to adopt the recommendation to remand and instead affirm based on federal question jurisdiction.

## ARGUMENT

This objection does not dispute the Magistrate Judge's conclusion that complete preemption is not a proper basis for removal jurisdiction in this case. *See* Recommendation, at 5-6. Rather, this objection maintains that removal is proper because a substantial federal question is embedded in Plaintiffs' challenge to the Church's ecclesiastical policies.

**A.    Defendants Generally Agree with the Magistrate Judge's Summary of the Law.**

The Church Defendants generally agree with the Magistrate Judge's summary of the law governing whether a substantial federal question is embedded in a state law claim. Recommendation, at 7-9. The Recommendation correctly states the basic principle: "where an essential element of a plaintiff's claim involves federal law, the case may be removed regardless of the manner in which the claim is characterized in the complaint." Recommendation, at 8 (citing *Morongo Band of Mission Indians v. Rose*, 893 F.2d 1074, 1077 (9th Cir. 1990); *Board of County Commissioners v. Shroyer*, 662 F.Supp. 1542, 1544 (D. Colo. 1987)). In contrast, "where the complaint does not necessarily implicate federal law, removal is improper, notwithstanding the likelihood of a defense based on federal law." Recommendation, at 8 (citing *Oklahoma Tax Comm'n v. Graham*, 489 U.S. 838 (1989)).

**B.    On Its Face, Plaintiff's Institution-Wide Negligence Claim Raises an Unavoidable Federal Question by Challenging the Church's Ecclesiastical Policies.**

The Recommendation concludes that Plaintiffs' "Institution-wide negligence claim[]" is limited to "attack[ing] a *secular* child abuse policy, or lack thereof," thereby avoiding any challenge to the Church's ecclesiastical policies, beliefs or doctrine. Recommendation, at 10 (emphasis added). The Church Defendants disagree for the following reasons:

Bullivant|Houser|Bailey PC
888 S.W. Fifth Avenue, Suite 300
Portland, Oregon 97204-2089
Telephone: 503.228.6351

**CHURCH DEFENDANTS' OBJECTIONS TO FINDINGS AND RECOMMENDATIONS REGARDING MOTION TO REMAND
Page 5**

- The Complaint contains no language limiting Plaintiffs' challenge to "secular" policies. There is no suggestion, for example, that Plaintiffs are challenging secular risk management policies.

- The Seventeenth Claim is pleaded in very broad terms, mounting an "institution-wide" attack on all of the Church's "child sex abuse policies," whether ecclesiastical or secular. Prop. Am. Cmplt., ¶¶ 105-107. The Complaint is laced with allegations suggesting faulty ecclesiastical policies, doctrine and polity. *See, e.g.,* Prop. Am. Cmplt., ¶¶ 4-5, 94, 115-18.

- The alleged institutional failing is that religious "callings and assignments" given to Church members "were being used by pedophiles to victimize children." Prop. Am. Cmplt., ¶ 106. Plaintiffs' primary challenge is to Church doctrines and ecclesiastical policies governing these religious callings and assignments.

- Plaintiffs repeatedly allege that the perpetrator was wrongly called as a "Spiritual Leader."[2] *See, e.g.,* Prop. Am. Cmplt., ¶¶ 4-7, 9, 11-13, 19, 21, 23-25, 31, 33, 35-37.

- Plaintiffs directly attack ecclesiastical practices by alleging that a "Bishop" inappropriately applied the Church's doctrines of repentance and forgiveness by "informing people that [the perpetrator] had 'repented,' and that he should be welcomed back" into the congregation as a member. Prop. Am. Cmplt., ¶ 94.

The Recommendation states that plaintiff need not prove all such factual allegations to prevail on their institutional negligence claim. Recommendation, at 9-10. That may be true. But that is not the standard for determining federal question jurisdiction. Rather, the standard is whether any of Plaintiffs' allegations or theories of recovery give rise to a federal question. The fact remains that the Complaint itself directly challenges all Church policies relating to abuse – even referencing repentance. The Complaint cannot be read to put at issue only secular policies.

---

[2] Indeed, the term "Spiritual Leader" appears to be the most used phrase in the Complaint. However, the Church denies that the perpetrator was ever a "Spiritual Leader" in the Church. Indeed, this term is totally foreign. It is not used by the Church, and there is no such position in its polity.

Bullivant|Houser|Bailey PC

888 S.W. Fifth Avenue, Suite 300
Portland, Oregon 97204-2089
Telephone: 503.228.6351

**CHURCH DEFENDANTS' OBJECTIONS TO FINDINGS AND RECOMMENDATIONS REGARDING MOTION TO REMAND**
**Page 6**

**C.    The Church's Policies Regarding Abuse Are All Ecclesiastical; There Are No Secular Abuse Policies.**

More fundamentally, the policies that Plaintiffs call into question are all deeply rooted in Church doctrine and ecclesiastical matters:

- The only Church policies potentially at issue are found in Church scripture and in the ecclesiastical canons contained in the official *General Handbook of Instructions* ("Instructions") for clergy.  (The relevant Instructions are attached as Exhibit A).

- The Foreword to the 1983 Instructions reveals the ecclesiastical nature of the policies:  "This handbook has been prepared to guide priesthood officers so 'that they themselves may be prepared and that my people may be taught more perfectly , . . . and know more perfectly concerning their duty, and the things which I [the Lord] require at their hands' (D&C 105:10)."  Exhibit A, Instructions, at ix (quoting Church scripture).  Further, while "[o]fficers of the Church should be familiar with the instructions in this handbook", "beyond these instructions, they should seek the guidance of the Holy Spirit earnestly for direction as they serve the Lord in their callings." *Id*.  For Church clergy, the Instructions are divinely-inspired policies that help Church clergy perform their religious duties as directed by the Holy Spirit.

- The Church's policies directly addressing abuse are found in the sections of the clergy instructions relating to ecclesiastical discipline for transgressors.  "[S]erious transgressions" such as "child molesting" and "incest" are grounds for Church discipline.  Exhibit A, Instructions, at 51.

- "Church courts must be convened" for serious transgressions when the "transgressor poses a serious threat to other Church members."  *Id*.  In ecclesiastical courts, "[b]ishops and stake presidents [*i.e.*, supervising clergy] are judges of a member's worthiness for all Church privileges.  The purpose of everything a bishop or stake president does should be to strengthen individuals in their quests for exaltation.  Thus, no bishop or stake president can ignore serious transgressions of which he has knowledge or evidence.  He has the solemn duty not only to keep the Church unspotted from the sins of the world, but also to help individuals repent."  *Id.*

- Plaintiffs challenge Church policies regarding "LDS callings and assignments."  Prop. Am. Cmplt., at ¶106.  Under Church doctrine, all able Church members who are observant and who are not the subject of Church discipline should assist in the ministry of the Church by fulfilling various

Bullivant|Houser|Bailey PC

888 S.W. Fifth Avenue, Suite 300
Portland, Oregon  97204-2089
Telephone: 503.228.6351

**CHURCH DEFENDANTS' OBJECTIONS TO FINDINGS AND RECOMMENDATIONS REGARDING MOTION TO REMAND**
**Page 7**

religious callings and assignments within their congregations, such a leading the music or teaching a Sunday school class.[3]

- The bishop of the local congregation issues such callings and assignments according to ecclesiastical policies. The Instructions provide: "Everyone called to a position in the Church is entitled to be called by the spirit of inspiration. Therefore, Church leaders should seek earnestly to know the will of the Lord when considering calls to Church responsibilities." Instructions, at 17. Callings must be ratified by vote of the congregation before they become effective. *Id.* at 17-18.

Plaintiffs desire to challenge these policies. On its face, Plaintiffs' Complaint would require the jury to examine issues such as whether the Church should impose stricter ecclesiastical discipline on those who abuse children, whether the repentance process should be longer (or perhaps that there should be no repentance at all), whether religious callings or ecclesiastical assignments should be given to those who have abused in the past, and perhaps even whether past perpetrators should be able to attend congregational church meetings and partake of the sacraments there because there are also children present who may be endangered. The point is not that these issues are insignificant or unimportant. The welfare and safety of children are of enormous importance to the Church and its members.

But when a group of plaintiffs seeks to impose answers to difficult ecclesiastical questions upon a church by resorting to the civil courts and by seeking millions in compensatory and punitive damages,[4] significant federal questions arise. Just how far can plaintiffs go in insisting that ecclesiastical discipline be imposed upon a member so as to keep him from future callings and assignments in the Church? Just how far can a civil jury go in studying a church's religious instructions to its clergy on these matters as it determines

---

[3] *See, e.g.*, Victor E. Schwartz & Leah Lorber, "Defining the Duty of Religious Institutions to Protect Others: Surgical Instruments, Not Machetes, Are Required," 74 Cinn. L. Rev. 11, 53-54 (2005) (discussing LDS callings).

[4] Plaintiffs have already informed the Church Defendants that they intend to amend their Complaint to seek punitive damages for the Church's alleged failures.

Bullivant|Houser|Bailey PC
888 S.W. Fifth Avenue, Suite 300
Portland, Oregon 97204-2089
Telephone: 503.228.6351

**CHURCH DEFENDANTS' OBJECTIONS TO FINDINGS AND RECOMMENDATIONS REGARDING MOTION TO REMAND
Page 8**

whether those religious instructions are adequate? Just how far can secular law go in telling a church that it cannot grant complete forgiveness to certain sinners? To be sure, the answers to these questions are not simple, especially if children are to be protected. But whatever the correct answers are, the Church Defendants contend that adjudicating such questions in a civil court raises a substantial federal question.

Moreover, if the court and jury determined that the Church's ecclesiastical policies were inadequate to deal with the alleged problem of members using Church callings to perpetrate abuse, they would then be required to determine what "secular" policies would have been reasonable and "adequate" (and thus should have been adopted) to govern Church callings. That too cannot possibly occur without a probing examination of the doctrine, beliefs, ecclesiastical policies, polity (structure), and religious traditions of the Church: a party cannot be negligent for failing to implement a secular policy that would be unreasonable in its particular organization. Among other things, this approach would require the court to examine the doctrinally mandated process by which the Church has adopted and implemented its ecclesiastical policies over the past several decades. Church Mem. in Opp., at 12-13.

In sum, given the deeply religious and ecclesiastical nature of the only policies at issue, the conclusion that Plaintiffs' institution-wide negligence claim only "attack[s] a secular child abuse policy" is not correct. The Complaint attacks the Church's ecclesiastical policies, raising necessary and weighty questions under the First Amendment – not merely defenses, but unavoidable questions of justiciability – about a civil court's authority and competence to adjudicate inherently religious subject matters.

/ / /

/ / /

/ / /

/ / /

Bullivant|Houser|Bailey PC

888 S.W. Fifth Avenue, Suite 300
Portland, Oregon 97204-2089
Telephone: 503.228.6351

**CHURCH DEFENDANTS' OBJECTIONS TO FINDINGS AND RECOMMENDATIONS REGARDING MOTION TO REMAND**
**Page 9**

### D. The Magistrate Judge's Recommendation Cannot Be Reconciled With the Standards Illuminated in Previous Decisions of this Court.

The Recommendation contradicts the standards set out in previous decisions of this Court addressing removal of child abuse claims against religious organizations. These cases establish the same basic standard in determining whether removal is proper: a First Amendment issue is not raised unless secular courts are asked to pass judgment on a church's internal relationships, communications, policies and practices. To establish removal jurisdiction, a church is required to show that the plaintiff cannot establish the "prima facie elements" of his claim *"without resorting to an unconstitutional examination of church law or doctrine."* Remand Order, *BB, et al, v. Corp. of the President of the Church of Jesus Christ of Latter-Day Saints*, CV 02-80-BR, at 13 (D. Or. 2002) (attached as Exhibit 1 to Church Mem. in Opp.) (emphasis added).

Most respondeat superior and negligence claims raise no First Amendment ground for removal because *"the court will not need to make any judgment on [the] appropriateness, correctness or validity"* of a church's doctrines or ecclesiastical policies. *M.K. v. Archdiocese of Portland in Oregon*, 228 F. Supp. 2d 1168, 1172 (D. Or. 2002). But plaintiff's institution-wide negligence claim is fundamentally different than the claims addressed in these decisions. By definition, to prove that the Church was *institutionally* deficient in protecting children, Plaintiffs must point to the internal operations, organization, polity, and underlying doctrines of the Church. To meet this burden of proof, Plaintiffs must do two things: (1) introduce evidence showing the actual operations, organization, and polity of the Church; and then (2) introduce evidence (most likely expert testimony) that these operations, organization and polity were not up to some standard of care on an institution-wide basis. Thus, unlike *M.K.* and *B.B.*, Plaintiffs' institutional negligence claim will require the judge and jury to examine the Church's religious doctrines and polices and their

Bullivant|Houser|Bailey PC

888 S.W. Fifth Avenue, Suite 300
Portland, Oregon 97204-2089
Telephone: 503.228.6351

**CHURCH DEFENDANTS' OBJECTIONS TO FINDINGS AND RECOMMENDATIONS REGARDING MOTION TO REMAND**
**Page 10**

adequacy and appropriateness relating to abuse and callings and assignments. *M.K.* and *B.B.* both recognized that a claim requiring such an examination would raise a federal question.[5]

The Magistrate Judge cites *M.K.* for the proposition that "consideration by the court of Defendant's canons, or other religious rules" does not always raise a federal question. Recommendation, at 9 (citing *M.K.*, 228 F. Supp. 2d at 1172). That is true, but irrelevant here. In *M.K.*, this Court found that it could inquire regarding the duties of a priest to determine whether, as an employee, he was acting within the course and scope of employment for respondeat superior purposes. But this Court specifically stated that this was permitted because it did *not* require the court to "make any judgment on appropriateness, correctness or validity" of any of the ecclesiastical policies or doctrines being considered. 228 F. Supp. 2d at 1172 (emphasis added). Plaintiffs' claim requires the very sort of judgment this Court in *M.K.* said would raise a federal question.

## CONCLUSION

On the face of the Complaint, and regardless of any affirmative defense, the Seventeenth Claim unavoidably raises substantial federal (First Amendment) questions. The Magistrate Judge's Recommendation adequately states the law but fails to acknowledge the implications of the Complaint. For the foregoing reasons and those stated in the Church Defendants' briefing before the Magistrate Judge, federal question jurisdiction exists over Plaintiffs' Seventeenth Claim for Relief. Plaintiffs' Motion for Remand should therefore be denied.

---

[5] This rule does not make removal likely in most church child abuse cases. Plaintiffs' institution-wide negligence claim is extremely rare in this area of practice. As noted, it is in essence an institutional reform claim – a claim not just that a church or its agents acted negligently in a particular circumstance, but rather that the church is organized and operates in a negligent way on an institution-wide basis. It is not often that a plaintiff will have a good-faith basis to bring such a claim. But when such an unusual claim is brought, it deserves the careful review of a federal court because of the sensitive constitutional rights and limitations that are involved.

**Bullivant|Houser|Bailey PC**

888 S.W. Fifth Avenue, Suite 300
Portland, Oregon  97204-2089
Telephone: 503.228.6351

**CHURCH DEFENDANTS' OBJECTIONS TO FINDINGS AND RECOMMENDATIONS REGARDING MOTION TO REMAND
Page 11**

DATED this 22nd day of August, 2008.

        BULLIVANT HOUSER BAILEY PC

        BY /s/ David Ernst
         **Stephen F. English**
         OSB #730843
         **David A. Ernst**
         OSB #851967
         Telephone: 503.228.6351
         Attorneys for LDS Church Defendants

10735034.2

**Bullivant|Houser|Bailey PC**
888 S.W. Fifth Avenue, Suite 300
Portland, Oregon 97204-2089
Telephone: 503.228.6351

**CHURCH DEFENDANTS' OBJECTIONS TO FINDINGS AND RECOMMENDATIONS REGARDING MOTION TO REMAND**
**Page 12**